## ORDER OF RAILWAY CONDUCTORS OF AMERICA ET AL. *v.* SWAN ET AL.

NO. 63.

Argued December 10, 11, 1946.—Decided January 13, 1947.

*V. C. Shuttleworth* argued the cause for petitioners. With him on the brief were *H. E. Wilmarth, Everett L. Gordon* and *Leo J. Hassenauer.*

*Douglas F. Smith* argued the cause for Carrier Members of the First and Fourth Divisions et al., respondents. With him on the brief were *Kenneth F. Burgess, R. J. Hagman, Bryce L. Hamilton, Burton Mason* and *John A. Sheean.*

*Anan Raymond* argued the cause for the Railroad Yardmasters of America, respondents. With him on the brief was *Conrad H. Poppenhusen.*

MR. JUSTICE MURPHY delivered the opinion of the Court.

Our attention here is directed to a determination of which division of the National Railroad Adjustment Board has jurisdiction over disputes involving railroad yardmasters. The four divisions of the Board and their respective jurisdictions are established by § 3, First (h), of the Railway Labor Act, as amended in 1934.[1]

---

[1] 48 Stat. 1185, 1190–1191; 45 U. S. C. § 153, First (h).

Each division of the Board is composed of an equal number of representatives of carriers and of national labor organizations. The statute authorizes the carriers and the national labor organizations to select their respective representatives and to designate the division on which each such representative shall serve. § 3, First (b) and (c). The jurisdiction of the divisions relates to disputes growing out of "grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . ." § 3, First (i). Disputes involving employees in certain specifically designated crafts are assigned to each division; the Fourth Division also has a "catch-all" jurisdiction over all disputes not assigned to one of the other three divisions. Appropriate provisions are made for hearings and for the entry of an award, to be followed by an order directed to the carrier if the award be in favor of the petitioner. In the event that the carrier fails to comply with the order, the petitioner or any person for whose benefit the order was made may seek enforcement of the order in a federal district court. § 3, First (p). In such suits, "the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated . . ." And the court is given power to take such action as may be appropriate to enforce or set aside the order. See *Switchmen's Union* v. *National Mediation Board,* 320 U. S. 297, 305.

Two of the national labor organizations are the Order of Railway Conductors and the Brotherhood of Railroad Trainmen, petitioners herein. Their membership includes a small portion of the total number of railroad yardmasters in the country, approximately 20% of the total on the basis of the railroad mileage represented. Each of these organizations has one representative on the First Division and each contends that all yardmaster disputes must be heard solely by that division. But that

contention is contradicted by the Railroad Yardmasters of America, a national labor organization composed almost entirely of yardmasters and claiming to represent more than 70% of all the yardmasters in the country. That organization, which is an intervenor-respondent herein, has failed to place a representative on any of the four divisions. Along with certain other organizations representing the small balance of yardmasters, it claims that yardmaster disputes lie within the exclusive jurisdiction of the Fourth Division. Various carriers with representatives on both the First and the Fourth Divisions join in that claim.

The result of this controversy is a stalemate so far as yardmaster disputes are concerned. The carrier and the labor members of the First Division are split evenly, the carrier members claiming that the division has no jurisdiction over these matters. The members of the Fourth Division are also evenly divided on the jurisdictional question, the labor members being of the view that yardmaster disputes are outside that division's jurisdiction. And since all the parties concede that neither the Second nor the Third Division has jurisdiction, no settlement of these disputes is possible under the present situation.[2]

---

[2] A decree was entered in the District Court in 1938 commanding the Fourth Division to hear and determine certain disputes involving yardmasters. That case arose on a petition for mandamus filed by the Railroad Yardmasters of America against the members of the Fourth Division. After issuance of summons, the members of the Fourth Division appeared and filed an answer stating that they were of the opinion that the Fourth Division did have jurisdiction. The decree was then entered with the consent of the parties to the action, but without argument and without the District Court being aware that a public question was involved and that other parties had an interest in the matter. The District Court and the Circuit Court of Appeals in the instant case held that this 1938 decree was not *res judicata* of the issue now presented in view of the circumstances under which it was entered.

The Order of Railway Conductors and the Brotherhood of Railroad Trainmen brought this action under 28 U. S. C. § 400 (1) to obtain a declaratory judgment to the effect that the First Division has sole jurisdiction over yardmaster disputes. Members of the First and Fourth Divisions were made parties defendant; and the Railroad Yardmasters of America, the Great Northern Railway Company and the Southern Pacific Company were allowed to intervene. The District Court, after a hearing, held that yardmaster disputes fall within the "catch-all" jurisdiction of the Fourth Division. The Circuit Court of Appeals agreed. 152 F. 2d 325. We granted certiorari because the issue raised is one of importance in the orderly administration of the Railway Labor Act. 327 U. S. 776.

At the outstart it is important to note that judicial review of this matter is not precluded by the principles set forth in *Switchmen's Union* v. *National Mediation Board, supra,* and companion cases, *General Committee* v. *M.-K.-T. R. Co.,* 320 U. S. 323, and *General Committee* v. *Southern Pacific Co.,* 320 U. S. 338. We are dealing here with something quite different from an administrative determination which Congress has made final and beyond the realm of judicial scrutiny. We are dealing with a jurisdictional frustration on an administrative level, making impossible the issuance of administrative orders which Congress explicitly has opened to review by the courts. Until that basic jurisdictional controversy is settled, the procedure contemplated by § 3 of the Railway Labor Act remains a dead letter so far as yardmasters are concerned and the statutory rights of such persons become atrophied. A declaratory judgment action is therefore appropriate to remove such an administrative stagnation.

In other instances, we have left the problem of jurisdiction to be determined in the first instance by the ad-

ministrative agency. *Myers* v. *Bethlehem Corp.*, 303 U. S. 41. But here both the First and the Fourth Divisions of the Board, due to the evenly-matched membership of railroad and labor representatives, appear hopelessly divided on the jurisdictional issue, making a determination impossible. Judicial guidance at this stage is justified as long as such a condition exists.

The issue is primarily one of statutory interpretation. The First Division is given jurisdiction over disputes "involving train- and yard-service employees of carriers; that is, engineers, firemen, hostlers, and outside hostler helpers, conductors, trainmen, and yard-service employees." The Fourth Division's jurisdiction extends to disputes "involving employees of carriers directly or indirectly engaged in transportation of passengers or property by water, and all other employees of carriers over which jurisdiction is not given to the first, second, and third divisions." It is agreed that the only possible category under the First Division into which yardmasters might be placed is "yard-service employees." But if they cannot be so placed, they must necessarily fall into the "catch-all" jurisdiction of the Fourth Division. The problem thus is to determine what Congress meant when it used the term "yard-service employees."

There is no statutory definition of "yard-service employees." Nor is the term explained in any of the relevant legislative debates or reports; and it derives no meaning from the statutory policy or framework. Moreover, it is not in common or general usage outside of the railroad world. It is a technical term found only in railroad parlance. Evidence as to the meaning attached to it by those who are familiar with such parlance therefore becomes relevant in determining the meaning of the term as used by Congress. See *O'Hara* v. *Luckenbach S. S. Co.*, 269 U. S. 364, 370–371.

The parties, all of whom are well acquainted with railroad terminology, stipulated certain facts. It was agreed that a railroad yard is a system of tracks within defined limits over which movements of engines and cars not authorized by timetable or train order may be made, subject to prescribed signals and rules or special instructions. It was further agreed that the "yard-service employees" or "yardmen" working in a yard perform such functions as switching, making and breaking up trains, moving and storing cars, inspecting cars and freight, repairing cars, maintaining equipment, sending and receiving messages, keeping records and making reports. As to yardmasters, the stipulation stated: "All such yardmen and other employees performing work in a yard are directed and supervised in their work by a yardmaster, with the aid, if necessary, of one or more assistant yardmasters. Yardmasters do not and may not perform the work of yardmen and employees in train and engine service; they may perform some clerical work, if their entire time is not taken up with the direction and supervision of yardmen and other employees working in yards. . . . In general, yardmasters run the yards, of which they are in charge, and they are responsible for conditions within the same. Necessarily, they exercise a substantial measure of individual initiative and responsibility."

All of the witnesses who testified at the hearing agreed that yardmasters are functionally different from other employees working in yards due to their supervisory activities and responsibilities. The evidence also indicated that yardmasters have supervision over some who work within the yards but who are not spoken of as "yard-service employees," such as storekeepers, section men and clerks. On the crucial point, there was substantial agreement among the witnesses that yardmasters are not commonly designated in railroad parlance as "yard-service

employees," that term being reserved for the yardmen described in the stipulation who work under the supervision of the yardmasters.[3]

The documentary evidence submitted by the parties tends to bear out this testimony. Thus numerous past awards made by the First and Fourth Divisions speak of yardmasters as distinct from yardmen or yard-service employees.[4] And the Interstate Commerce Commission, in making various classifications of railroad employees, recognizes a clear distinction between yardmasters and those

---

[3] Petitioners' sole witness testified: "Yardmen are usually men who have to do with the making up and breaking up of trains, switching in the yard, and supervising the work of the yardmen, which would include, in my opinion, yardmasters and assistant yardmasters." But his opinion as to yardmasters in this respect was based upon his understanding of the law, not upon his own use or his knowledge of the use of the term "yard-service employees." He explained his belief that "every tribunal that has decided a dispute for men engaged in yard service, such as yard engineers, firemen, hostlers, hostler helpers, road conductors, trainmen and yardmen, have also decided cases for yardmasters and assistant yardmasters. Division 1, set up under, by agreement, in 1918, the very first board in existence, did that. The Western Train Service Board, upon which I served, did that, as evidenced by Board decisions submitted here as an exhibit."

This witness also stated that yardmasters "fit more nearly in with the yard service employees than with any other class"—a recognition that yardmasters are different in fact from yard-service employees and that they do not fit precisely within that category.

[4] See National Railroad Adjustment Board, First Division, Award No. 1274 (July 13, 1936), Award No. 1464 (Oct. 7, 1936), Award No. 1603 (Dec. 14, 1936), Award No. 1648 (Jan. 21, 1937), Award No. 1728 (Feb. 11, 1937), Award No. 1896 (April 15, 1937), Award No. 2065 (July 16, 1937), Award No. 2364 (Nov. 12, 1937), Award No. 4466 (Jan. 15, 1940), Award No. 4548 (Feb. 8, 1940), Award No. 4584 (Feb. 20, 1940), Award No. 5816 (June 24, 1941), Award No. 7355 (Oct. 15, 1942); Fourth Division, Award No. 67 (July 25, 1940).

over whom they have supervision.[5] In addition, other documents introduced into the record and sources to which the parties have made reference either show the same distinction or are inconclusive on the matter.[6]

The District Court was therefore justified in finding as a fact that railroad usage has never included yardmasters and assistant yardmasters within the meaning of the terms "yard-service employees" or "yardmen." That court was also correct in concluding that the history of the adjustment of disputes prior to the amendment of the present statute in 1934 affords no assistance in resolving the problem confronting us. As pointed out more fully by the Circuit Court of Appeals, 152 F. 2d at 327–328, disputes involving yardmasters and disputes involving yard-service employees were previously submitted to various adjustment boards, which had been created by agreement, primarily on the basis of membership in signatory labor organizations. Jurisdiction was not then grounded, as it is now, on a craft or job classification irrespective of the labor organization representing the particular employees involved. Hence there was no occasion giving rise to a consistent and unequivocal administrative interpretation of the term "yard-service employees" to include yardmasters—an interpretation which, had it existed, might have shed some light on the adoption of the term by Congress in 1934.

---

[5] See *Ex parte No. 72* (Nov. 24, 1920, unreported); *Ex parte No. 106, Six-Hour Day Investigation,* 190 I. C. C. 750. The forms and classification plan to be used in reporting wage and compensation data of steam railroad employees to the United States Railroad Labor Board and the Interstate Commerce Commission place yardmasters under "Supervisory Skilled Trades and Labor Service," while those performing yard-service work are placed under "Train and Engine Service."

[6] Thus the method used by the National Railroad Adjustment Board in indexing awards of the First Division does not provide any helpful guide as to the usage of "yard-service employees" in the railroad world.

Petitioners also urge that the jurisdiction of the First Division over yardmaster disputes is established by the settled administrative action of that division since its creation in 1934.[7] There is a serious question whether the jurisdictional issue now before us was fully considered by the division in many of the cases to which reference is made; certainly none of the awards did more than recite perfunctorily that the division had jurisdiction over the particular dispute. And none of the awards involved the Railroad Yardmasters of America, which has consistently objected to the assumption of jurisdiction by the First Division.[8] But aside from those factors, the present and prolonged administrative deadlock on the jurisdictional issue destroys whatever persuasive effect these prior adjudications by the First Division may have had. The administrative action has become anything but settled.

Finally, petitioners point out that Congress has failed to amend § 3, First (h), so as specifically to exclude "yardmasters and other subordinate officers" from the jurisdiction of the First Division, despite the introduction of two bills to that effect in the Senate in 1940 and 1941.[9] These bills were sent to an appropriate committee, but were never reported out. It does not appear whether the bills died because they were thought to be unnecessary or undesirable. No hearings were held; no committee reports were made. Under such circumstances, the failure of Congress to amend the statute is without meaning for purposes of statutory interpretation.

We accordingly agree with the two courts below that yardmasters are not "yard-service employees" within the jurisdiction of the First Division of the National Railroad

---

[7] See cases cited in footnote 4, *supra.*

[8] See footnote 2, *supra.*

[9] S. 4375, 76th Cong., 3d Sess.; S. 1660, 77th Cong., 1st Sess. Both bills were introduced by Senator Smith at the request of the American Short Line Railroad Association.

Adjustment Board. Yardmaster disputes fall exclusively within the "catch-all" jurisdiction of the Fourth Division.

*Affirmed.*

Mr. JUSTICE FRANKFURTER.

After the fullest consideration this Court recently held in two cases that jurisdictional disputes between railroad unions subject to the Railway Labor Act are not within judicial competence. *Switchmen's Union* v. *Board,* 320 U. S. 297; *General Committee* v. *M.-K.-T. R. Co.,* 320 U. S. 323. The decision in those cases derived from the fact that Congress "had not expressly authorized judicial review" and the history, the setting, and the implications of railway labor controversies counseled against inferring judicial review. Here we have a controversy between two divisions of the National Railroad Adjustment Board as to the disputes over which they respectively have jurisdiction. This controversy, however, entails consideration of technical problems in the railroad world and consequences in construing the distribution of authority among the divisions of the Adjustment Board for which judicial review seems no more appropriate than it did to settle jurisdictional conflicts between railroad brotherhoods. Not finding any command in the statute for judicial review of this controversy, it seems to me, therefore, appropriate to leave it to the mediatory resources of the Railway Labor Act. If it be said that thus far deadlock has resulted, it does not follow that it will continue, if the Court keeps hands off. In any event, because mediatory machinery may not be effective is not a sufficient reason for judicial intervention, unless the direction of Congress is much more clear than I find it in the Railway Labor Act. This view is reinforced by the fact that the decision of the Court may be no more than an advisory opinion. My doubts

have not commended themselves to the Court, but since I am not alone in entertaining them it seemed to me that they should be expressed.