**Dan W. DREW, Plaintiff,**

v.

**Rufus B. LAWRIMORE, T. B. Cunningham and J. B. Cook, as the Marketing Quota Review Committee, Area of Venue #5, State of South Carolina, of the United States Department of Agriculture, Orville L. Freeman, Secretary of Agriculture of the United States of America, Paul W. Kowalski, Charles E. Calhoun, Mills P. Tuten and C. B. Player, Jr., as the State Agricultural Stabilization and Conservation Committee for the State of South Carolina of the United States Department of Agriculture, and J. Evan Goodyear, Paul Richardson and W. F. Page, as the County Agricultural Stabilization and Conservation Committee for Marion County of the United States Department of Agriculture, Defendants.**

Civ. A. No. 66–532.

United States District Court
D. South Carolina,
Columbia Division.

Aug. 25, 1966.

E. N. Zeigler, Florence, S. C., for plaintiff.

Terrell L. Glenn, U. S. Atty., Charles Porter, Ass't U. S. Atty., Columbia, S. C., and C. Westbrook Murphy, Dept. of Justice, for defendants.

HEMPHILL, District Judge.

■ Plaintiff, in general, a Marion County, South Carolina, farmer, in particular a tobacco grower, seeks relief from administrative decisions affecting his acreage-poundage quota for tobacco. Defendants represent the United States Department of Agriculture in various capacities. The two causes of action stated in the complaint are interrelated and a determination in either will affect the result in the other. The first cause of action is one for review of a decision dated July 8, 1966, of the Marketing Quota Review Committee, Area of Venue #5, State of South Carolina, of the United States Department of Agriculture, as it affects the plaintiff's tobacco marketing quota for the year

1966. It seeks relief under the provisions of 7 U.S.C. § 1365[1] and § 1366.[2] The second cause of action is brought against the Secretary of Agriculture of the United States, the State Agricultural Stabilization and Conservation Committee for the State of South Carolina of the United States Department of Agriculture and the County Agricultural Stabilization and Conservation Committee for Marion County of the United States Department of Agriculture, and is in the nature of a mandamus. Specific performance of the Agricultural Adjustment Act of 1938, as amended, the Agricultural Act of 1949, as amended, and other related acts, is sought, as well as a declaration of plaintiff's rights under these laws. It is brought under the provisions of 7 U.S.C. § 1376[3] and 28 U.S.C. § 2201[4] and § 1361.[5] A rule to show

1. 7 U.S.C.A. § 1365. Institution of proceeding for court review of committee findings. If the farmer is dissatisfied with the determination of the review committee, he may, within fifteen days after a notice of such determination is mailed to him by registered mail or by certified mail, file a bill in equity against the review committee as defendant in the United States district court, or institute proceedings for review in any court of record of the State having general jurisdiction, sitting in the county or the district in which his farm is located, for the purpose of obtaining a review of such determination. Bond shall be given in an amount and with surety satisfactory to the court to secure the United States for the costs of the proceeding. The bill of complaint in such proceeding may be served by delivering a copy thereof to any one of the members of the review committee. Thereupon the review committee shall certify and file in the court a transcript of the record upon which the determination complained of was made, together with its findings of fact.

2. 7 U.S.C.A. § 1366. Court review. The review by the court shall be limited to questions of law, and the findings of fact by the review committee, if supported by evidence, shall be conclusive. If application is made to the court for leave to adduce additional evidence, and it is shown to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the hearing before the review committee, the court may direct such additional evidence to be taken before the review committee in such manner and upon such terms and conditions as to the court may seem proper. The review committee may modify its findings of fact or its determination by reason of the additional evidence so taken, and it shall file with the court such modified findings or determination, which findings of fact shall be conclusive. At the earliest convenient time, the court, in term time or vacation, shall hear and de-

termine the case upon the original record of the hearing before the review committee, and upon such record as supplemented if supplemented, by further hearing before the review committee pursuant to direction of the court. The court shall affirm the review committee's determination, or modified determination, if the court determines that the same is in accordance with law. If the court determines that such determination or modified determination is not in accordance with law, the court shall remand the proceeding to the review committee with direction either to make such determination as the court shall determine to be in accordance with law or to take such further proceedings as, in the court's opinion, the law requires.

3. 7 U.S.C.A. § 1376. Court jurisdiction; duties of United States attorneys; remedies and penalties as additional. The several district courts of the United States are vested with jurisdiction specifically to enforce the provisions of this subchapter. If and when the Secretary shall so request, it shall be the duty of the several United States attorneys in their respective districts, under the direction of the Attorney General, to institute proceedings to collect the penalties provided in this subchapter. The remedies and penalties provided for herein shall be in addition to, and not exclusive of, any of the remedies or penalties under existing law.

4. 28 U.S.C.A. § 2201. Creation of remedy. In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

5. 28 U.S.C.A. § 1361 (Supp.). Action to compel an officer of the United States to

cause was issued by this court directing defendants to appear and show cause why relief should not be granted on the second cause of action. Defendants filed a return and were represented by counsel before me at the hearing of the rule. This court has jurisdiction in the premises and defendants are properly in this forum.

The issue raised in the second cause of action in this case is whether or not the defendants the Secretary of Agriculture and the members of the Agricultural Stabilization and Conservation Committee for the State of South Carolina and the County Agricultural Stabilization and Conservation Committee for Marion County of the United States Department of Agriculture are bound by the provisions of 16 U.S.C. § 590g[6](a) and other applicable statutes and therefore should determine the boundaries between certain communities in Marion County, South Carolina, for the purpose of administering the acreage-poundage quota system for tobacco; and particularly with due regard for the physical, scientific and economic factors affecting the use and conservation of the plaintiff's land and other lands similarly situated. For the purpose of brevity, the words Agricultural Stabilization and Conservation Committee shall hereafter be abbreviated as ASC.

Plaintiff is the owner and operator of a farm in Marion County, South Carolina, with tobacco allotments assigned for the marketing year 1966. His farm is composed mainly of five tracts of land with his principal dwelling located on the north side of State Highway Secondary Road 19 (hereafter referred to as State Road 19) in the center of a rough isosceles triangle with the Town of Marion approximately 4½ miles distant on the northwest corner, the town of Mullins approximately 3¼ miles distant on the northeast corner, and the village of Rains approximately four miles distant at the southern corner.

In or about December, 1965, plaintiff received notice of his tobacco acreage allotment and marketing quota for the year 1966, and being dissatisfied with the farm marketing quota assigned to him, filed for review before the defendant Marketing Quota Review Committee, Area of Venue #5, State of South Carolina, of the United States Department of Agriculture (hereafter referred to as the Review Committee). Because of the reconstitution of his farm after January 1, 1966, a second notice of tobacco acreage allotment and marketing quota for the year 1966 was mailed to the plaintiff in February, and he filed a second application for review before the Review Committee, the two applications having been consolidated for the purpose of a hearing.

The issues raised in plaintiff's application for review before the Review Committee revolved around the failure of the State ASC and Marion County ASC Committees to establish boundaries between local administrative areas designated as communities in the area of Marion County where the farm is located. It is undisputed in the record that when a boundary line is established for a farm that "is physically located in a community, it shall be administratively located in such community." 30 F.R. 6146[7], Section 724.68(c)(5).[8] Plaintiff alleges that

---

perform his duty. The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

6. Set forth hereinafter.

7. Last amended 30 F.R. 10283.

8. Government's Exhibit E–5 § 724.68(c) (5): In applying the provisions of this paragraph, a farm that is physically located in a community shall be administratively located in such community. If the farm is physically located in more than one community, the farm shall be considered as located in the community to which it was assigned when the 1965 farm acreage allotment was established on an acreage basis, or, if the farm was not assigned to a community when the 1965 farm acreage allotment was established on an acreage basis, the county committee shall locate the farm in the

his farm is or should be physically located in either the South Mullins or Rains Communities and that the State and County ASC Committee have erroneously placed him administratively in the Marion Community.

Plaintiff's contention before the Review Committee was that although his farm is physically in the South Mullins or Rains Communities, the defendant State and County ASC Committees have failed to fix boundaries or have acted capriciously and in abuse of discretion in fixing boundaries, if any have been fixed, which would indicate the physical location of his farm in reference to the three communities.

The practical consequence of locating the plaintiff's farm administratively in the Marion Community is dramatically apparent in the size of the tobacco marketing quota to which his farm would be entitled: If his farm is placed administratively in the Marion Community, his tobacco marketing quota would be 79,431 pounds. If the farm is placed administratively in the South Mullins Community, 89,719 pounds, and in the Rains Community, 89,214 pounds. To place plaintiff's farms administratively in the Marion Community means that his tobacco marketing quota is approximately 10,000 pounds less than if his farms were administratively in South Mullins or Rains Communities.

The hearing before the Review Committee was originally scheduled for May 19, 1966, but because of conflicts was postponed until June 22, 1966. At that hearing, the defendant members of the Review Committee took testimony and received exhibits, the record of said hearing having been filed with this court on August 12, 1966. A careful examination of the testimony and exhibits shows that no physical boundaries for communities had been established between Marion, South Mullins and Rains Communities in

Marion County. In determining the physical location of plaintiff's farm, the word boundary could only mean that which indicates or fixes the extent of the areas known as Marion, South Mullins and Rains Communities.

Prior to the filing of application for review before the Review Committee, plaintiff had requested both the State and County ASC Committees to show him the location of these boundaries; both informed that they could not. At the hearing before the Review Committee, the Office Manager of the Marion County ASC Committee was asked to take a grease pencil[9] and draw these boundaries on an aerial photograph of the area which includes plaintiff's farm, but she replied that she could not. The only other witness for the government, an employee of the State ASC Committee, stated that he had attempted to reconstruct boundary lines by grouping together farms with similar alphabetical designations in their farm serial numbers. Thus, the plaintiff's farm has a State and County Code and Farm Serial Number 56–034–C–385, in which the "C" indicates that it is administratively in the Marion Community. If a "G" had been placed there, it would indicate that administratively his farm was in the South Mullins Community, and an "R", that his farm was administratively in the Rains Community.

The testimony of witness Peterman[10] referred to above was based on aerial photographs taken by the Department of Agriculture on which farm serial numbers had been indicated, but he admitted that he had no information as to whether these numbers were correctly entered or whether the serial numbers had been changed in the years prior to 1963. It is significant that in his testimony, he endeavored to place the physical boundary between Marion and South Mullins Communities immediately to the east of

community in which the principal dwelling is located or where the major portion of the cropland is located, if there is no dwelling.

9. The aerial photograph was before the court.

10. Compliance Specialist of the State ASC Committee.

plaintiff's farm, separating his land from that of Sallie M. Schuler, whose farm serial number is F–162. He testified that he was unable to explain how the farm immediately adjoining plaintiff's farm on the west owned by Luther Hendley (Serial Number F–171) also bore an "F" designation indicating that administratively it was in the Rains Community. This witness was unable to explain how a large tract of land (formerly Serial Number F–171) farther to the west of plaintiff's and Hendley's farms and fronting on State Road 19 had also borne an "F" designation indicating that it was in the Rains Community. The evidence discloses that after 1963, the serial number was administratively changed to show a "C" designation. The fact that this farm (F–171) farther to the west in the direction of the Town of Marion was for many years prior to 1963 in the Rains Community is corroborated by an ASCS form for petition for participation in the 1963 wheat program covering this farm which plaintiff introduced into evidence. Significantly, it shows under the name and address, "171 Dan W. Drew, F R–1, 00 Mullins, S. C.", the letter "F" (Rains) being the usual and only indication given to a farmer of the community's administrative designation.

The Review Committee ruled that any boundary lines which the government's witness might have established after December, 1965, would not be admissible at the hearing before them, and counsel for the government stated that he was not offering the aerial photographs on which the witness endeavored to base his testimony as evidence of the location of boundary lines. In fact, the testimony of this witness was thoroughly impeached, and I find it to have little probative value.

The only explanation for the absence of any boundaries which the government offered at the hearing before the Review Committee was that, at some time in the past, there had been boundaries marked on an aerial photograph but that it had been lost and no one could say where the lines actually had been. It was suggested by the Office Manager of the Marion County ASC Committee that discrepancies might have occurred by overlapping of photographs. But no witness could reconcile the discrepancies which appear in the record with any boundary which might have existed in the past, whether with or without official sanction.

Defendants were and are required by law to establish a physical boundary line for the Marion, South Mullins and Rains Communities as of December, 1965, in order that the correctness of the administrative designation of plaintiff's community may be determined. The basic authority for the creation of local administrative areas which are referred to as communities is found in 16 U.S.C. § 590h (b), the relevant portions of which are as follows:

(b) The Secretary shall have power to carry out the purposes specified in clauses (1), (2), (3), (4), and (5) of section 590g(a) of this title by making payments or grants of other aid to agricultural producers, including tenants and sharecroppers, in amounts determined by the Secretary to be fair and reasonable in connection with the effectuation of such purposes during the year with respect to which such payments or grants are made, and measured by (1) their treatment or use of their land, or a part thereof, for soil restoration, soil conservation, or the prevention of erosion; (2) changes in the use of their land; (3) their equitable share, as determined by the Secretary, of the normal national production of any commodity or commodities required for domestic consumption; or (4) their equitable share, as determined by the Secretary, of the national production of any commodity or commodities required for domestic consumption and exports adjusted to reflect the extent to which their utilization of cropland on the farm conforms to farming practices which the Secretary determines will best effectuate the purposes specified in section 590g(a) of this title; or (5) any combination of the above. Causes (1) and

(2) above shall be construed to cover water conservation and the beneficial use of water on individual farms, including measures to prevent run-off, the building of check dams and ponds, and providing facilities for applying water to the land. In determining the amount of any payment or grant measured by (1) or (2) the Secretary shall take into consideration the productivity of the land affected by the farming practices adopted during the year with respect to which such payment is made. In carrying out the provisions of this section in the States of the Union, except Alaska, the Secretary is directed to utilize the services of local and State committees selected as hereinafter provided. The Secretary shall designate local administrative areas as units for administration of programs under this section. No such local area shall include more than one county or parts of different counties.

The relevant portions of Section 590g referred to above in Section 590h (b) are as follows:

(a) It is declared to be the policy of this chapter also to secure, and the purposes of this chapter shall also include, (1) preservation and improvement of soil fertility; (2) *promotion of the economic use and conservation of land;* (3) *diminution of exploitation and wasteful and unscientific use of national soil resources;* (4) the protection of rivers and harbors against the results of soil erosion in aid of maintaining the navigability of waters and water courses and in aid of flood control; and (5) reestablishment, at as rapid a rate as the Secretary of Agriculture determines to be practicable and in the general public interest, of the ratio between the purchasing power of the net income per person on farms and that of the income per person not on farms that prevailed during the five-year period August 1909– July 1914, inclusive, as determined from statistics available in the United States Department of Agriculture, and the maintenance of such ratio. * * *

■ The two above sections of Title 16 are to be interpreted together, and the Secretary of Agriculture in acting under the authority of Section h (b) is, by law, required to consider the purposes stated in Section 590g (a) and especially the promotion of the economic use and conservation of land and the diminution of exploitation and wasteful and unscientific use of national soil resources.

Title 7, Section 1314c, of the Agricultural Adjustment Act, as amended, defines the connection between the Acreage-Poundage Quota System and Title 16 of the Code:

ACREAGE - POUNDAGE QUOTAS
· —Definitions

(a) For the purposes of this section—
* * * * * *

(5) The "community average yield" means for Fluecured tobacco the average yield per acre in the community designated by the Secretary as a local administrative area under the provisions of section 590h (b) of Title 16 which is determined by averaging the yields per acre for the three highest years of five years 1959 to 1963, inclusive, except that if the yield for any of the three highest years is less than 80 per centum of the average for the three years then that year or years shall be eliminated and the average of the remaining years shall be the community average yield. * * *

Since June 19, 1954, and prior thereto, the Secretary of Agriculture has issued regulations citing as his authority 16 U.S.C. § 590h under the title of, "Regulations Government ASC County and Community Communities", or words to that effect, the latest being found in 30 F.R. 14301[11], which provides as follows:

§ 7.7 *Determination of elective areas.*

Each county shall be divided into local administrative areas, referred to in this subpart as "communities." The term "county" in Alaska shall be the

---

11.  Government's Exhibit E–4 dated November 16, 1965.

area so designated by the State committee. The boundaries of the communities shall be fixed by the State committee after considering any recommendations by the county committee. No such community shall include more than one county or parts of different counties.

■ It is clear from the Record of the Hearing before the Review Committee that the defendants have not complied with the requirements of the statutory law or the regulations issued pursuant thereto with regard to the determination of boundaries for Marion, South Mullins and Rains Communities.

The question of immediate concern is where should those boundaries be located as of December, 1965, at the time plaintiff's marketing quota was determined by the defendants. Plaintiff contended before the Review Committee that under the law the physical determination of boundaries for these communities should be made with due regard for the physical, scientific and economic facts affecting the use and conservation of his land. In support, plaintiff presented as a witness Dr. H. P. Cooper, holder of a Ph.D. in agronomy from Cornell University, teacher of agronomy for some thirty years and former Dean of the School of Agriculture at Clemson University for twenty-four of those years. He testified that he was familiar with the capabilities and qualities of soil in the different sections of South Carolina, having had some supervisory control over experiment stations in the state as part of his duties at Clemson. He testified that he had examined the soils on Mr. Drew's farm and compared them with soils on the eastern side of Marion County. These soils are separated by a natural feature which Dr. Cooper described as a drainage divide running roughly north and south and dividing Marion County into two drainage basins. The lands to the west of the drainage divide, because of the geological formation of the soil, is less well suited to growing tobacco than

land to the east of the drainage divide. Again, this is a physical fact which Dr. Cooper testified he had verified by personal inspection and tests. The drainage divide also influences the growth of crops because of the increased rainfall occurring to the east of the drainage divide and the relatively drier situation to the west of the drainage divide. Thus, cotton is a better crop on the west side of the divide than on the east side, and tobacco is a better crop on the east side than on the west side. The line is shown as line A-B on Applicant's (Plaintiff's) Exhibits A–1[12] and A–8[13], and crosses State Road 19 approximately 1¾ miles west of plaintiff's dwelling, so that practically all of his farm lands are located to the east of Line A-B.

■ No testimony was offered by the government to establish any administrative convenience for placing the plaintiff's farms within or without the South Mullins or Rains Communities. As to a boundary line between the South Mullins and Rains Communities, there seem to be no natural features which should be considered and mere administrative convenience would determine its location. A fair reading of the Agricultural Adjustment Act of 1938, as amended, the Agricultural Act of 1949, as amended, and the soil Conservation Act convinces me that the right of this plaintiff, and others who may be in the same situation, to a faithful and fair application of the law is entitled to greater precedence than the administrative convenience of the defendants.

The Review Committee decided the issues adversely to the plaintiff. From that decision the plaintiff appealed by bringing suit in this court. The final adjudication of the action of the Review Committee will be affected by the decision in the second cause of action. The provisions of 7 U.S.C. § 1366, provided: "If application is made to the court for leave to adduce additional evidence, and it is shown to the satisfaction of the court that such additional evidence is material

---

12. Aerial Photograph.

13. County Map.

and that there were reasonable grounds for failure to adduce such evidence in the hearing before the review committee, the court may direct such additional evidence to be taken before the review committee in such manner and upon such terms and conditions as to the court may seem proper." This statute requires that the court determine plaintiff's appeal from the Review Committee's decision "at the earliest convenient time * * * upon the original record of the hearing before the review committee, and upon such record as supplemented if supplemented; by further hearing before the review committee pursuant to direction of the court."

This court finds that the failure of the defendants the Secretary of Agriculture, the State ASC Committee and the Marion County ASC Committee to determine a physical boundary line between the Marion, South Mullins and Rains Communities as of December, 1965, when plaintiff's tobacco marketing quota for 1966 was determined and mailed to him, is essential to the adjudication of his appeal. The failure of the record to show these boundary lines is solely the responsibility of the defendants, and the plaintiff is without fault in failing to adduce such testimony, and on the contrary has adduced ample testimony upon which such physical boundary lines should have and may be determined.

■ Defendants the Secretary of Agriculture and the two ASC Committees are required forthwith to determine a physical boundary between Marion, South Mullins and Rains Communities in Marion County, taking into consideration the provisions of 16 U.S.C. § 590g (a), the facts established in the record before the defendant Review Committee in this case, and the opinions expressed in this Order. Defendants have argued to this court asking recognition of an administrative policy which does not take into consideration the provisions of 16 U.S.C. § 590g (a) or the physical, scientific and economic factors affecting the use and conservation of plaintiff's land, and suggest that the question

of boundaries between these communities is moot since the State ASC Committee on June 7, 1966, approved boundaries which physically place plaintiff's farm in the Marion Community. Neither argument is convincing.

The defendants in their Return to the Rule to Show Cause and in argument before me have alleged that they have followed a "thirty-year administrative policy" of setting up communities without taking into consideration the matters set forth in 16 U.S.C. § 590g (a). This "administrative policy" appears in two major formulations in the record. First, the defendant Marketing Quota Review Committee in its decision dated July 8, 1966, finds as a "conclusion" that "[T]here is no provision either in the Acts of Congress or the Regulations promulgated by the Secretary of Agriculture that provides for any consideration to be given to scientific or geological analysis of the soil in the determination of community boundaries for administrative purposes." The answer to this argument lies in the fact that Congress spelled out in the statute the policy and purposes, that neither plaintiff nor defendants can ignore. Defendants, by the very language of the statute are charged with scientific and geological consideration. To complete in the spectrum of modern business farming must be accelerated to maximum use of scientific, geological, and other modern applications and data. Surely the Secretary of Agriculture would not contend otherwise, despite the arguments here.

In the affidavit of August 12, 1966, attached to the Return to the Rule to Show Cause and signed by Charles M. Cox, Assistant Deputy Administrator State and County Operations of the Agricultural Stabilization and Conservation Service of the United States Department of Agriculture, the "administrative policy" argued for by the defendants is stated to be one in which "local administrative areas have always been set up to obtain efficient administration of agricultural programs administered through county and community commit-

tees," and that in creating local administrative areas under this policy, *"consideration has been given to minor civil divisions in the county, or geographical features* [14] *in the county, or a reasonably uniform workload in each community, or a combination of these factors."* The defendants in their Return, telescoping the two policy statements, aver: "There is no indication in the statute or elsewhere that these administrative boundaries should be established in accordance with the geo-physical considerations suggested by plaintiff."

The provisions of 16 U.S.C. § 590g (a), which defendants contend have no binding effect upon them in creating boundaries between Marion, South Mullins and Rains Communities in Marion County, are "the promotion of the economic use and conservation of land" and the "diminution of exploitation and wasteful and unscientific use of national soil resources." The word "geography" is defined by Webster as "[T]he natural features, collectively, of an area * * *", and the word "agriculture" as "[T]he art or science of cultivating the ground * *". Agriculture, then, involves the application of science to the soil, and geography, a broad term, must include geology to the extent that geology influences the natural features of the area considered.

This court finds the first statement of "policy" as contained in the Review Committee's decision to be so patently arbitrary and contrary to the provisions of 16 U.S.C. § 590g (a) and the clear meaning of the words agriculture and geography as to be irrational. It could not be regarded as "policy" which could be seriously considered by this court. In categorically excluding scientific and geological analysis of soil, it contradicts the Cox statement that geographical features are to be considered.

The second formulation of the alleged "thirty-year administrative policy" admits that "geographical features in the county" should be given consideration in setting boundaries for communities. It is hard to see how the defendants can contend that the location of a natural drainage ridge bisecting Marion County, clearly recognizable difference in soil types lying on either side of this drainage ridge, and the climatic conditions prevailing on either side of the ridge as they affect crops are not all "natural features" which the policy of the defendants would require to be taken into consideration in creating boundaries between Marion, South Mullins and Rains Communities in Marion County. There seems to be no contradiction between considering "geographical features in the county" and using the purposes set forth in 16 U.S.C. § 590g (a) as a guide in considering "geographical features". Public policy demands, and Congress intended, that in administering an "agricultural" program the promotion of the economic use and conservation of land the diminution of exploitation and wasteful and unscientific use of national soil resources, as required by statute, be the overriding goal of considering "geographical features".

■■ As a matter of law, the provisions of 16 U.S.C. § 590g(a) are controlling factors in determining administrative areas required to be created by the defendant Secretary of Agriculture under the provisions of 16 U.S.C. § 590h (b). There is no ambiguity in the meaning of the provisions of 16 U.S.C. § 590g (a) and there is no ambiguity in their application to 16 U.S.C. § 590h(b).

■ For the defendants to prevail in their argument that they have adopted a "thirty-year administrative policy" contrary to the statutory policy considerations set forth in 16 U.S.C. § 590g(a), they must first establish that there is ambiguity in these statutory provisions. The rule that an administrative interpretation of an act is entitled to controlling weight may not be invoked where the statute is not ambiguous or where the interpretation was neither continuous

---

14. Then what is a drainage divide; a geographical feature? Certainly not a fantasy.

nor contemporaneous with the enactment of the statute. The interpretation must be reasonable and it cannot confer or deny rights inconsistent with the express terms of the statute. "At best the administrative interpretation is not controlling on the courts." Land O'Lakes Creameries, Inc. v. Commodity Credit Corp., 265 F.2d 163, 166 (C.A.Minn. 1959).[15]

There is no showing in the record that the alleged "policy" was contemporaneous with the enactment of the statute, and there is overwhelming proof that whatever "policy" was adopted in the communities of Marion, South Mullins and Rains in Marion County was not only not continuous, but was largely ignored. Nor is there any showing that a "policy" as such was ever promulgated by the defendant Secretary of Agriculture, who has the statutory duty to determine community boundaries. This duty he delegated to the State Committees. The record before me establishes no policy of the defendant South Carolina State Committee, and in fact affirmatively shows that the defendant South Carolina State Committee failed to carry out any policy as it affects the plaintiff here. Where it is proper to consider administrative interpretation of a statute, there must have been definite and unequivocal administrative action of the type under consideration and it must have been authoritative in character. Order of Railway Conductors of America v. Swann, 152 F.2d 325 (C.A.Ill.1945), affirmed 329 U.S. 520, 67 S.Ct. 405, 91 L.Ed. 471.

Defendants state in their Return to the Rule to Show Cause that the "location of the community boundaries became important in 1965 because of an amendment effective that year to the Agricultural Adjustment Act of 1938 by the addition of Section 318, 7 U.S.C.A. Section 1314c (Supp.1966)." This long lack of importance led to disregard of boundaries both by the tobacco farmers in the areas and by the State and County ASC Committees which failed to comply with the regulations of the defendant Secretary to determine boundaries for these communities. There is no history of long acquiescence with regard to the new importance of the community boundaries after the passage of the 1965 amendment to the Agricultural Act; and no theory of legislative acquiescence in administrative construction of an unambiguous statute can be successfully argued. 82 C.J.S. Statutes, § 359, page 770. Nor is the fact that Congress has not stepped in to correct condonement or ratification of the acts of defendants in any way.

So far as the argument that the plaintiff here is personally bound by his acquiescence in the administrative designation of his farm as being in Marion Community is concerned, these defendants, who have been grossly negligent in failing to carry out the mandate of the law and regulations issued pursuant thereto, are hardly in a position to excuse themselves at plaintiff's expense. It is inferable from the record that plaintiff and others in a similar situation were, or might have been, misled by the defendants' conduct in failing to establish boundaries for communities and treat these boundaries as a matter of importance. The argument of personal acquiescence by the plaintiff is particularly unconvincing in view of the defendants' admission in their Return that the location of boundaries for communities only became a matter of importance in 1965 with the passage of the tobacco acreage-poundage quota system.

Defendants argue that the matter of location of boundaries is now moot, since the State ASC Committee

15. The parallel between the Land O'Lakes Creameries case and Drew (here) is significant. In Land O'Lakes the court was insistent in its decision that the Agricultural Act of 1949 did not give the Secretary of Agriculture discretion to support milk prices in whatever manner he might think desirable. Perhaps the handling of community designations in Drew was desirable to defendants, even administratively convenient because of avoidance of the work and applications necessary to follow the statute, but such policy or interpretation lacks weight with this court.

took action on June 7, 1966. This action by the State ASC Committee did not and could not affect plaintiff's rights as of the time his tobacco marketing quota for 1966 was determined in December, 1965. Whether he was correctly placed for administrative purposes in the Marion Community or should have been placed in the Rains or South Mullins Communities depends upon where his farm was physically located with relation to the boundaries between those three communities. Until those boundaries are correctly determined as a matter of record in this case, the subsequent actions of these defendants cannot affect the plaintiff's rights. With regard to the determination of those boundaries as of December, 1965, this court regards it appropriate to consider and give effect to the time-honored maxim of equity practice, "Equity looks upon that as done which ought to have been done." 1 Story Eq.Jur. Sec. 64g.

■ But even if this court were inclined to regard the action of the defendant State ASC Committee in approving, on June 7, 1966, a map showing community boundary lines in Marion County which the defendants submitted as part of their return to the rule to show cause, there are other cogent reasons for rejecting it. The boundaries shown thereon are contradicted by the testimony of the witnesses offered by the government in the hearing before the Review Committee, and the boundaries shown on the map delineate communities demonstrably different from those which the government's witnesses endeavored to describe in their testimony. These boundaries, extending, as they do, the line between Marion and South Mullins farther to the east of the natural drainage divide, are evidence of a more determined intent on the part of the defendants to ignore the provisions of 16 U.S.C. § 590h(a) and the physical, scientific and economic affect in the use and conservation of plaintiff's land. The effect of this eastward extension of the boundary between Marion Community and South Mullins and Rains Communities would result in

changing, with unfavorable economic consequences, community designations of numerous farms, including that of Sallie Schuler, F–162, immediately to the east of plaintiff's farm, although these farms have not been administratively in the Marion Community for as long as twenty years or more. Also, the action of the State ASC Committee taken on June 7, 1966, with the hearing on plaintiff's case imminent, could have hardly been impartial. It is inevitable that a decision with obvious benefits to the government's position as opposed to the plaintiff's claims took place in a polarized atmosphere. It should be observed, too, that the first notice plaintiff and other affected farmers had of the action of the State ASC Committee was about August 6, 1966, after this action had been filed. Far from regarding the actions of the State ASC Committee of June 7, 1966, with regard to fixing boundary lines for the communities of Marion, South Mullins and Rains as rendering the questions raised in the second cause of action moot, this court finds that insofar as those actions affect the plaintiff's present and future rights in the premises, they must be regarded as a nullity.

Both the provisions of 7 U.S.C. § 1366 and the fact that tobacco marketing sales are now in progress compel this court to give the plaintiff as speedy and complete relief as possible.

### THEREFORE

Defendants Orville L. Freeman, Secretary of Agriculture of the United States of America; Paul W. Kowalski, Charles E. Calhoun, Mills P. Tuten and C. B. Player, Jr., as the State Agricultural Stabilization and Conservation Committee for the State of South Carolina of the United States Department of Agriculture; and J. Evan Goodyear, Paul Richardson and W. F. Page, as the County Agricultural Stabilization and Conservation Committee for Marion County of the United States of America, be, and they are hereby, ordered forthwith to carry out the respective duties of their offices under the laws of the United States of America and the Regulations

issued by the Secretary of Agriculture pursuant thereto; and they are directed to determine boundaries as and if established in December, 1965, for Marion, South Mullins and Rains Communities in Marion County, South Carolina, as required by law and regulations issued pursuant thereto, giving full consideration to the provisions of 16 U.S.C. § 590g(a) and such relevant physical, scientific and economic facts established in the record of the hearing before the Marketing Quota Review Committee, Area of Venue #5, State of South Carolina, of the United States Department of Agriculture, held on June 22, 1966, and filed with this court on August 12, 1966, as may have affected the use and conservation of plaintiff's land and other lands similarly situated.

Defendants Paul W. Kowalski, Charles E. Calhoun, Mills P. Tuten and C. B. Player, Jr., as the State Agricultural Stabilization and Conservation Committee for the State of South Carolina, of the United States Department of Agriculture, are directed to file with the Clerk of this Court and with Emory D. Cantey, Clerk of the Marketing Quota Review Committee, Area of Venue #5, State of South Carolina, of the United States Department of Agriculture, within ten (10) days after the filing of this Order, aerial photographs or a composite of aerial photographs of the area shown on Applicant's Exhibit A–1 and on a County map comparable with Applicant's Exhibit A–8 showing the location of boundaries of Marion, South Mullins and Rains Communities which shall be fixed as required by this Order.

The appeal of the plaintiff from the decision of the Review Committee is resubmitted to the Marketing Quota Review Committee, Area of Venue #5, State of South Carolina, of the United States Department of Agriculture, for the purpose of receiving the exhibits ordered by this court to be prepared and filed with it and to make such modification of its former decision in this case as may be necessary in order to comply with the law and the opinions expressed in this Order.

Rufus B. Lawrimore, T. B. Cunningham and J. B. Cook, as the Marketing Quota Review Committee, Area of Venue #5, State of South Carolina, of the United States Department of Agriculture, are ordered and directed to file their supplemental record and modified findings and/or determinations with this court within fifteen (15) days of the date of the filing of this Order.

And it is so ordered.