APPLE GROUP, LTD., APPELLANT, *v.* GRANGER TOWNSHIP
BOARD OF ZONING APPEALS ET AL., APPELLEES.

[Cite as *Apple Group, Ltd. v. Granger Twp. Bd. of Zoning
Appeals*, 144 Ohio St.3d 188, 2015-Ohio-2343.]

(No. 2014–0301—Submitted February 4, 2015—Decided June 17, 2015.)

LANZINGER, J.

{¶ 1} This zoning case involves the interpretation of a single statutory phrase. We are asked to determine whether R.C. 519.02 requires a township to adopt a "comprehensive plan" separately from its zoning resolution. We hold that a comprehensive plan pursuant to R.C. 519.02 may be included within a township's zoning resolution and need not be a separate and distinct document. Furthermore, a zoning resolution is enacted in accordance with a comprehensive plan, as required by R.C. 519.02, if it (1) reflects current land uses, (2) allows for change, (3) promotes public health and safety, (4) uniformly classifies similar areas, (5) clearly defines district locations and boundaries, and (6) identifies the use or uses to which each property may be put.

## I. Case Background

{¶ 2} Appellant, Apple Group, Ltd. ("Apple"), purchased 88 acres of undeveloped land in Granger Township ("Granger") in May 2006. The property was zoned R–1 residential, which permits the construction of single-family and two-family homes on a minimum lot size of two acres. Granger's zoning resolution also provides for an R–2 residential district that allows two to three dwelling units per acre if they can be serviced by central water and sanitary sewers at the time of development. Because Apple sought to develop a subdivision consisting of 44 single-family homes situated on approximately one-acre lots on its property, it applied to appellee Granger Township Board of Zoning Appeals ("BZA") for

176 variances, four variances for each of the 44 proposed lots.[1] The BZA denied the variance application.

{¶ 3} Apple filed an administrative appeal, and the BZA's decision was affirmed by the Medina County Court of Common Pleas. The court found that the BZA's decision was supported by a preponderance of the evidence and that the request for variances was in reality an attempt to rezone the land to a new district unlike the R–1 or R–2 residential districts, a request that the BZA was not authorized to grant. Apple also filed a complaint for declaratory judgment, seeking a declaration that Granger's zoning resolution establishing the R–1 zoning classification is unconstitutional and beyond the authority delegated to Granger in R.C. Chapter 519. A magistrate issued a decision denying Apple's claims. With respect to the constitutional claim, the magistrate concluded, "Granger Township's desire to maintain the rural character of its land is a legitimate governmental goal, which may be regulated by its zoning resolution." In denying Apple's claim that Granger exceeded its authority in enacting the zoning resolution without enacting a separate comprehensive plan, the magistrate concluded, "The zoning resolution itself meets the statutory requirement of a comprehensive plan, because it has the essential characteristics of a comprehensive plan; it encompasses all geographic parts of the community and integrates all functional elements." The common pleas court adopted the magistrate's findings, and Apple appealed to the Ninth District Court of Appeals.

{¶ 4} At the court of appeals, Apple argued that the trial court's declaration that Granger had complied with R.C. 519.02's requirement that a zoning resolution be adopted in accordance with a comprehensive plan was in error and was against the manifest weight of the evidence. The court of appeals concluded that the township's failure to enact a separate comprehensive plan did not mean it lacks authority to adopt a zoning resolution. The court reasoned that the purpose of the requirement in R.C. 519.02 for a comprehensive plan is to prevent piecemeal zoning and ensure that someone purchasing property will be able to determine in advance how the property may be used. The appellate court rejected Apple's argument that a zoning ordinance cannot constitute a comprehensive plan and concluded that the trial court's decision that Granger's zoning resolution constitutes a comprehensive plan pursuant to R.C. 519.02 was not against the manifest weight of the evidence.

{¶ 5} An appeal was taken to this court, and we accepted Apple's two propositions of law:

---

1. Specifically, it asked for a variance from the R–1 district's two-acre lot minimum, the 175–foot minimum street-side lot frontage, the 175–foot minimum continuous front-yard width, and the 15–foot side-yard setback requirement.

For purposes of a township's exercise of its statutory zoning power, the "zoning plan" that R.C. Chapter 519 empowers townships to adopt by resolution, which includes the zoning regulations and a zoning map, is not identical to or a substitute for the "comprehensive plan" identified in R.C. 519.02, with which R.C. 519.02 requires the "zoning plan" to be "in accordance."

A township's zoning regulations, adopted by resolution under R.C. Chapter 519, are, standing alone, insufficient as a matter of law to establish that such regulations are "in accordance with a comprehensive plan," as R.C. 519.02 requires.

*See* 139 Ohio St.3d 1404, 2014-Ohio-2245, 9 N.E.3d 1062. In short, Apple argues that a comprehensive plan must be enacted separately and apart from zoning regulations.

## II. Legal Analysis

{¶ 6} "Zoning" is "the government's 'regulation of the character and intensity of real estate uses through police power.' [American Institute of Real Estate Appraisers, *The Dictionary of Real Estate Appraisal* 332 (1984)]." *Developers Diversified Ltd. v. Cuyahoga Cty. Bd. of Revision,* 84 Ohio St.3d 32, 36, 701 N.E.2d 975 (1998). In Ohio, the authority of a township to enact zoning ordinances derives not from the township's inherent authority or the Ohio Constitution, but from the General Assembly. *Torok v. Jones,* 5 Ohio St.3d 31, 32, 448 N.E.2d 819 (1983), citing *Yorkavitz v. Columbia Twp. Bd. of Trustees,* 166 Ohio St. 349, 142 N.E.2d 655 (1957).

{¶ 7} R.C. Chapter 519 sets forth the method by which townships may regulate land use. R.C. 519.02(A) grants authority to a township's board of trustees to regulate the size and location of buildings and other structures and the use of land for residences or other purposes:

Except as otherwise provided in this section, in the interest of the public convenience, comfort, prosperity, or general welfare, *the board by resolution, in accordance with a comprehensive plan, may regulate* the location of, set back lines for, and the uses of buildings and other structures * * * and the uses of land * * * in the unincorporated territory of the township, and may establish reasonable landscaping standards and architectural standards excluding exterior building materials in the unincorporated territory of the township.

(Emphasis added.)

{¶ 8} Apple's appeal does not challenge the reasonableness of Granger's zoning resolution but only whether the township's resolution may also function as its comprehensive plan. According to Apple, a comprehensive plan must be created first to assure the public that the township's zoning has been properly considered. Apple argues that a zoning resolution must implement the comprehensive plan. Granger argues that its Revised Zoning Resolution is the comprehensive plan identified in R.C. 519.02. The parties thus disagree over the meaning of the phrase "in accordance with a comprehensive plan."

*A "Comprehensive Plan"*

{¶ 9} There is no standard definition for "comprehensive plan" in the context of zoning law. The original Standard Zoning Enabling Act ("SZEA"), which the United States Department of Commerce issued in 1922 as a model for state legislation enabling and limiting local zoning power, included a requirement that zoning decisions be made "in accordance with a comprehensive plan." Hirokawa, *Making Sense of a "Misunderstanding of the Planning Process": Examining the Relationship Between Zoning and Rezoning Under the Change–or–Mistake Rule,* 44 Urb.Law. 295, 299 (2012). However, "[t]he term 'comprehensive plan' was not defined in the SZEA, and so both its purpose and confines of legal sufficiency have not been well understood or enforced." *Id.* at 300. The view of the majority of states adopting the SZEA language is that "comprehensive planning requires some form of forethought and reasoned consideration, as opposed to a separate plan document that becomes an overarching constitution guiding development." Sullivan & Richter, *Out of the Chaos: Towards a National System of Land–Use Procedures,* 34 Urb.Law. 449, 454 (2002). A minority of states view the comprehensive plan as "an independent document separate from the comprehensive zoning ordinance." Benintendi, Comment, *The Role of the Comprehensive Plan in Ohio: Moving Away from the Traditional View,* 17 U.Dayton L.Rev. 207, 217 (1991).

{¶ 10} While R.C. Chapter 519 offers detailed instructions on how townships are to adopt or amend zoning plans or resolutions, it does not define the term "comprehensive plan" or offer any specific guidance on the standard to be used to establish one. But we have considered the phrase "in accordance with a comprehensive plan," as used in R.C. 519.02, and stated indirectly what it was not in *Cassell v. Lexington Twp. Bd. of Zoning Appeals,* 163 Ohio St. 340, 127 N.E.2d 11 (1955). There, we held:

> A township zoning regulation, which provides merely that a section of a township, one square mile in area, shall be zoned for farming, residential,

commercial and recreational uses, and which does not specify therein which portions of said section may be used for any or all of such purposes or is not accompanied by a map designating such use areas, is not adopted in accordance with a comprehensive plan.

*Id.*, paragraph two of the syllabus. Thus, by implication, a comprehensive plan consists of something more than zoning a section of a township to allow farming, residential, commercial, and recreational uses without specifying which portions of the section can be used for any of those purposes. In *Cassell*, we expressed concern over leaving the administration of zoning to the "unwarranted whim or caprice" of enforcement officials. *Id.* at 345–346. "The absence of any comprehensive plan in the regulation involved * * * open[ed] the door to an arbitrary and unreasonable administration of the regulation." *Id.* at 346.

{¶ 11} We considered the phrase "in accordance with a comprehensive plan" more recently in *B.J. Alan Co. v. Congress Twp. Bd. of Zoning Appeals,* 124 Ohio St.3d 1, 2009-Ohio-5863, 918 N.E.2d 501. That case addressed whether a township could rely on a comprehensive plan created at the county level. In answering yes, we explained:

R.C. 519.02 does not require that a township create its own comprehensive plan—it requires only that a zoning resolution be "in accordance with *a* comprehensive plan." (Emphasis added.) To require each township to create its own comprehensive plan is to read additional language into R.C. 519.02.

*Id.* at ¶ 13. We emphasized that our holding in the case was limited and noted that among the issues not determined in the case was whether the township zoning ordinance was indeed "in accordance" with the county's comprehensive plan. *Id.* at ¶ 43.

{¶ 12} Neither *Cassell* nor *B.J. Alan* provides the answer to the issue before us today, but each case sets forth principles that aid us in our decision. *Cassell* stands for the proposition that a comprehensive plan serves to protect against the arbitrary and unreasonable administration of a zoning regulation. *B.J. Alan* explains that a township is not required to create its own comprehensive plan, but that its zoning resolution must be enacted in accordance with *a* comprehensive plan.

{¶ 13} Apple argues that the term "comprehensive plan" is a term of art among zoning professionals and that the statutory language must be interpreted according to the meaning prevalent in that profession. This court, however, has never

treated the term "comprehensive plan" as a term of art, and no court has found that the phrase "comprehensive plan" has acquired a technical or particular meaning pursuant to R.C. 1.42. We have emphasized that "the plain meaning of a statute is always preferred." *State ex rel. Plain Dealer Publishing Co. v. Cleveland,* 106 Ohio St.3d 70, 2005-Ohio-3807, 831 N.E.2d 987, ¶ 40, citing *Lamie v. United States Trustee,* 540 U.S. 526, 536, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Furthermore, " '[i]f a review of the statute conveys a meaning that is clear, unequivocal, and definite, the court need look no further.' *Columbus City School Dist. Bd. of Edn. v. Wilkins,* 101 Ohio St.3d 112, 2004-Ohio-296, 802 N.E.2d 637, ¶ 26." *Id.* at ¶ 38. Our consideration of the statutory language leads us to conclude that no formally enacted comprehensive plan is required by R.C. 519.02.

{¶ 14} We agree with Granger that the plain meaning of the phrase "in accordance with a comprehensive plan" is that zoning regulations should be adopted pursuant to a plan that is comprehensive, or all-encompassing, in the sense that the plan addresses the specific goals and objectives for the entire township. This definition is implied in, and in keeping with, *Cassell,* which emphasizes that comprehensive plans are essential to protecting against arbitrary enforcement of zoning regulations. A court of appeals decision, however, is even more helpful in establishing a meaning of the contested phrase.

*White Oak*

{¶ 15} The Twelfth District Court of Appeals also concluded that a comprehensive plan need not be an independent document. *White Oak Property Dev., L.L.C. v. Washington Twp.,* 12th Dist. Brown No. CA2011–05–011, 2012-Ohio-425, 2012 WL 368254. In *White Oak,* the property owner sought declaratory relief on the basis of its claim that Washington Township's zoning resolution was unenforceable because it was not in accordance with a comprehensive plan. *Id.* at ¶ 4. The zoning resolution divided the territory of the township into four districts (agricultural, residential, commercial, and industrial) and reflected the primarily agricultural nature of the township's land. *Id.* at ¶ 17, 24. The zoning resolution covered many topics, including land use, housing, and environmental precautions, and it incorporated a zoning map that marked the location and boundaries of each district, which the court noted allowed potential purchasers to identify the permissible uses of any particular piece of property. *Id.* at ¶ 25. While the zoning resolution covered the entire township, the court of appeals emphasized that it also allowed for changes in zoning as the township's needs developed. *Id.* at ¶ 24.

{¶ 16} The Twelfth District agreed that the township's zoning resolution and accompanying zoning map constituted a comprehensive plan and that it therefore complied with R.C. 519.02. *Id.* at ¶ 23. The court considered the term "compre-

hensive plan" to be a "flexible term" that " 'must be sufficiently detailed that a potential purchaser might ascertain in advance to what use property might be put.' " *Id.* at ¶ 16, quoting *Rumpke Waste, Inc. v. Henderson*, 591 F.Supp. 521, 534 (S.D.Ohio 1984). And furthermore, "[w]ith respect to sufficient detail, the plan must 'define with certainty the location, boundaries and areas of the * * * districts,' and a failure to do so renders the plan invalid." *White Oak* at ¶ 16, quoting *Westlake v. Elrick*, 52 Ohio Law Abs. 538, 541, 83 N.E.2d 646 (8th Dist.1948). We adopt the factors that the *White Oak* court considered to be indicative of a comprehensive plan, i.e., that it "(1) reflect current land uses; (2) allow for change; (3) promote public health and safety; (4) uniformly classify similar areas; (5) clearly define district locations and boundaries; and (6) identify the use(s) to which each property may be put." *Id.* at ¶ 46, *citing Rumpke Waste* and *Elrick*. These factors are present within Granger's zoning resolution.

### Granger's Zoning Resolution

{¶ 17} Granger's Zoning Resolution is an exhaustive document, which consists of more than 100 pages and incorporates an attached zoning districts map.

{¶ 18} The resolution's stated purpose is

> to promote and protect the health, safety, morals, and welfare of the residents of the unincorporated area of Granger Township, Medina County, Ohio, and to conserve and protect property and property values, and to provide for the maintenance of the rural character of Granger Township, and to manage orderly growth and development in said Township.

{¶ 19} Thus, the zoning resolution is intended to be a comprehensive plan for the entire township. And all six *White Oak* points are met.

### 1. Reflects current land uses

{¶ 20} The resolution contains general regulations that apply to all districts or zones within the township and sets forth specific uniform regulations for each individual district. The resolution also clearly sets forth the zoning districts and their boundary line on the attached map, which allows any potential purchaser to determine the uses to which a piece of property may be put.

{¶ 21} It reflects current land uses in its intention to "provide for the maintenance of" the already-existing "rural character of Granger Township" and its establishment of zoning districts reflecting the established rural character of the township.

*2. Allows for change*

{¶ 22} The resolution allows for change: it establishes a process for property owners to obtain conditional zoning permits, which "provide controllable and reasonable flexibility in requirements for certain kinds of uses that will allow profitable latitude for the investor."

*3. Promotes health and safety*

{¶ 23} The resolution promotes public health and safety: a number of provisions, such as those regulating the placement of signs that are in part "intended to reduce sign or advertising distractions and obstructions that may contribute to traffic accidents," regulate potential hazards.

*4. Uniformly classifies similar areas*

{¶ 24} The resolution uniformly classifies similar areas: it creates seven distinct district types (R–1 Residential, R–2 Residential, C–1 Local Commercial, C–2 General Commercial, C–3 Highway Interchange Commercial, I–1 Industrial Commercial, and PDD Planned Development) and adopts clear regulations for each type of district.

*5. Clearly defines district locations and boundaries*

{¶ 25} The resolution contains clearly defined district locations and boundaries that are set forth on a zoning-districts map incorporated into the resolution. It presents rules for interpretation in the event that "uncertainty exists with respect to the boundaries of any of the aforesaid districts as shown on the zoning map."

*6. Identifies the use or uses to which each property may be put*

{¶ 26} Finally, the resolution identifies the use or uses to which each property may be put within each zoning type. For example, it allows for single-family dwellings, two-family dwellings, certain manufactured homes, and certain roadside stands among the permitted uses within an R–1 Residential District.

{¶ 27} We accordingly conclude that the resolution satisfies the requirement of R.C. 519.02 that it be enacted "in accordance with a comprehensive plan."

### III. Conclusion

{¶ 28} We agree with those appellate courts that have considered the issue and have held[2] that a comprehensive plan need not be set forth in a separate

---

2. *BGC Properties v. Bath Twp.*, 9th Dist. Summit No. 14252, 1990 WL 31789, *4 (Mar. 21, 1990); *Cent. Motors Corp. v. Pepper Pike*, 63 Ohio App.2d 34, 65, 409 N.E.2d 258 (8th Dist.1979); *White Oak*, 12th Dist. Brown No. CA2011–05–011, 2012-Ohio-425, 2012 WL 368254, ¶ 46.

document and may be included in the township's zoning plan. A comprehensive plan is defined as one that reflects current land uses within the township, allows for change, promotes public health and safety, uniformly classifies similar areas, clearly defines district locations and boundaries, and identifies the use or uses to which each property may be put. Granger's zoning resolution was enacted in accordance with such a comprehensive plan pursuant to R.C. 519.02.

{¶ 29} We accordingly affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, FRENCH, and O'NEILL, JJ., concur.

KENNEDY, J., dissents.

---

**KENNEDY, J., dissenting.**

{¶ 30} Respectfully, I dissent. How the General Assembly intended a township to exercise its zoning power over privately owned land is at the very heart of this controversy.

> [T]ownships of Ohio have no inherent or constitutionally granted police power, the power upon which zoning legislation is based. Whatever police or zoning power townships of Ohio have is that delegated by the General Assembly, and it follows that such power is limited to that which is expressly delegated to them by statute.

*Yorkavitz v. Columbia Twp. Bd. of Trustees,* 166 Ohio St. 349, 351, 142 N.E.2d 655 (1957).

{¶ 31} Because the unambiguous language in R.C. 519.02(A) demonstrates the General Assembly's intent to strictly limit a township's zoning authority to zoning regulations enacted "in accordance with a comprehensive plan," I dissent from the majority opinion's determination that a township's zoning resolution and a comprehensive plan can be one and the same.

{¶ 32} I also disagree with the majority's delineation of factors that it holds are indicative of a comprehensive plan and its determination that Granger Township's zoning resolution is a comprehensive plan, because these issues were not raised as propositions of law in this appeal and the parties neither briefed nor argued these matters. The majority defines a term that has acquired a particular meaning without reliance on authoritative or expert knowledge in a manner that is incongruous with the expert testimony presented in this matter, without consideration of the unique needs of Granger Township.

{¶ 33} I do not believe that a comprehensive plan must be a single formal document. Instead, it may be compiled from several sources. In the event, however, that Apple Group is able to prove that Granger Township does not have a comprehensive plan separate from its zoning resolution, even one compiled from several sources, the resolution should not be presumptively deemed invalid. Instead, the burden of proof shifts to Granger Township to establish that the resolution is a valid exercise of the power to zone granted by the General Assembly.

{¶ 34} Accordingly, I would reverse the judgment of the Ninth District Court of Appeals, and I would remand this matter to the trial court for further proceedings consistent with this opinion.

## I. Issues Presented on Appeal

### A. Statutory Interpretation of R.C. 519.02(A)

{¶ 35} When interpreting a statute, a court's paramount concern is legislative intent. *State ex rel. United States Steel Corp. v. Zaleski*, 98 Ohio St.3d 395, 2003-Ohio-1630, 786 N.E.2d 39, ¶ 12. "[T]he intent of the lawmakers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the lawmaking body, there is no occasion to resort to other means of interpretation." *Slinglaff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. We apply the statute as written and refrain from adding or deleting words when the statute's meaning is clear and unambiguous. *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, ¶ 20; *Armstrong v. John R. Jurgensen Co.*, 136 Ohio St.3d 58, 2013-Ohio-2237, 990 N.E.2d 568, ¶ 12.

{¶ 36} R.C. 519.02(A) states:

> Except as otherwise provided in this section, in the interest of the public health and safety, the board of township trustees may regulate by resolution, in accordance with a comprehensive plan, the location, height, bulk, number of stories, and size of buildings and other structures, including tents, cabins, and trailer coaches, percentages of lot areas that may be occupied, set back building lines, sizes of yards, courts, and other open spaces, the density of population, the uses of buildings and other structures, including tents, cabins, and trailer coaches, and the uses of land for trade, industry, residence, recreation, or other purposes in the unincorporated territory of the township. Except as otherwise provided in this section, in the interest of the public convenience, comfort, prosperity, or general welfare, the board by resolution, in accordance with a comprehen-

sive plan, may regulate the location of, set back lines for, and the uses of buildings and other structures, including tents, cabins, and trailer coaches, and the uses of land for trade, industry, residence, recreation, or other purposes in the unincorporated territory of the township, and may establish reasonable landscaping standards and architectural standards excluding exterior building materials in the unincorporated territory of the township. Except as otherwise provided in this section, in the interest of the public convenience, comfort, prosperity, or general welfare, the board may regulate by resolution, in accordance with a comprehensive plan, for nonresidential property only, the height, bulk, number of stories, and size of buildings and other structures, including tents, cabins, and trailer coaches, percentages of lot areas that may be occupied, sizes of yards, courts, and other open spaces, and the density of population in the unincorporated territory of the township. For all these purposes, the board may divide all or any part of the unincorporated territory of the township into districts or zones of such number, shape, and area as the board determines. All such regulations shall be uniform for each class or kind of building or other structure or use throughout any district or zone, but the regulations in one district or zone may differ from those in other districts or zones.

{¶ 37} The term "comprehensive plan" is not defined in R.C. Chapter 519. Contrary to the majority's assertion, however, we have previously recognized that the term has acquired a particular meaning. *Symmes Twp. Bd. of Trustees v. Smyth,* 87 Ohio St.3d 549, 555, 721 N.E.2d 1057 (2000). R.C. 1.42 instructs that "[w]ords and phrases that have acquired a technical or particular meaning * * * shall be construed accordingly." Therefore, the testimony of experts engaged in the field of planning and zoning is relevant to determining the meaning of the term "comprehensive plan" as it is used in R.C. 519.02(A). *See Order of Ry. Conductors of Am. v. Swan,* 329 U.S. 520, 525, 67 S.Ct. 405, 91 L.Ed. 471 (1947); Evid.R. 702.

{¶ 38} We have not, however, treated the word "resolution" as having acquired a particular meaning. An ordinary and common meaning of "resolution" is "a formal expression of opinion, will, or intent by an official body or assembled group." *Webster's Third New International Dictionary* 1933 (2002).

{¶ 39} The General Assembly used the phrase "in accordance with a comprehensive plan" and the word "resolution" in the same sentence in R.C. 519.02(A). Because "comprehensive plan" has acquired a particular meaning and "resolution" has not, they cannot describe the same thing. This interpretation is supported by the testimony of both parties' experts. Nothing in the experts'

testimony provides support for concluding that "comprehensive plan" and "resolution" convey the same meaning. To the contrary, both of the experts who testified stated that a zoning resolution is the implementation of the comprehensive plan. Therefore, the terms cannot be interchangeable.

{¶ 40} Moreover, while the majority reads the phrase "in accordance with" out of the statute, under our rules for statutory interpretation, we are required to give each word effective meaning. "Accordance" is defined as "agreement, accord" and is "now used chiefly in the phrase 'in accordance with.'" *Webster's* at 12. Another definition states, "To be *in accordance* is to be in conformity or compliance." (Italics sic.) Garner, *A Dictionary of Modern Legal Usage* 14 (2d Ed.1995). We also recently noted that "in accordance with" connotes rigid compliance. *State v. Niesen–Pennycuff,* 132 Ohio St.3d 416, 2012-Ohio-2730, 973 N.E.2d 221, ¶ 19.

{¶ 41} Once we strictly apply rules of statutory interpretation to R.C. 519.02(A), its meaning is clear and unambiguous. The General Assembly's language refers to two distinct items: a comprehensive plan and a zoning resolution. Therefore, the General Assembly granted townships the authority to zone, but required that the authority be exercised only in compliance with a comprehensive plan. The zoning resolution cannot comply with itself. Accordingly, the requirement of rigid compliance, coupled with the fact that "resolution" and "comprehensive plan" are distinct terms, conveys the meaning that they are separate documents.

{¶ 42} This interpretation is supported by the language in other statutes and regulations in which the General Assembly and regulatory agencies use the phrase "in accordance with" when identifying separate actions. In R.C. 941.21, which sets forth definitions relating to an animal disease, the General Assembly uses the phrase "in accordance with" numerous times. *See, e.g.,* R.C. 941.21(B)(1) ("negative" means animals that are determined to be negative "by tests conducted in accordance with [United States department of agriculture] methods and standards"). Ohio Adm.Code 3745–300–11, pertaining to the cleanup of contaminated property, repeatedly uses the phrase. *See, e.g.,* Ohio Adm.Code 3745–300–11(A)(1) ("when a phase II property assessment conducted in accordance with [Ohio Adm.Code] 3745–300–07") and 3745–300–11(C)(1) ("an operation and maintenance plan prepared in accordance with this rule"). These sections cannot be interpreted to mean that the test is also the methods and standards, R.C. 941.21(B)(1), or the assessment or maintenance plan is also the rule, Ohio Adm.Code 3745–300–11(A)(1) and (C)(1), that they must comply with. Instead, each action is separate.

{¶ 43} Lastly, the majority's holding requires the insertion of words into R.C. 519.02(A) that were not used by the General Assembly. Specifically, under the

majority's holding, R.C. 519.02(A) would state, "the board may regulate by resolution, in accordance with itself." However, we have repeatedly held that "[i]n matters of construction, it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used." *Cleveland Elec. Illum. Co. v. Cleveland,* 37 Ohio St.3d 50, 524 N.E.2d 441 (1988), paragraph three of the syllabus.

## B. Precedents and Scholarly Interpretations

{¶ 44} In addition to ignoring the rules of statutory interpretation, today's majority also ignores our precedents. While this is the first case to specifically consider whether a township zoning regulation can also be a "comprehensive plan," our precedents have acknowledged the significance of the General Assembly's term "in accordance with a comprehensive plan."

{¶ 45} In *Columbia Oldsmobile, Inc. v. Montgomery,* 56 Ohio St.3d 60, 65, 564 N.E.2d 455 (1990), this court held that "there is no statutory requirement that [a municipality] * * * enact a comprehensive community plan pursuant to its power to zone under R.C. 713.06 *et seq.*" To reach that conclusion, the court compared the statutory language permitting municipalities to zone with the statutes permitting counties and townships to enact zoning regulations. *Id.* at 66–67. R.C. 713.06, which addresses a municipality's power to zone, states only that a municipality may create "zones or districts * * * in the interest of the public health, safety, convenience, comfort, prosperity, or general welfare" and states that the municipality may adopt a plan for doing so. *Id.* But "R.C. 303.02, regulating rural land use in counties, and R.C. 519.02, regulating land use in townships, *require* that zoning regulations promulgated by counties and townships be in accordance with a comprehensive plan." (Emphasis sic.) *Columbia Oldsmobile* at 66.

{¶ 46} Moreover, contrary to the majority opinion's statement, our recent decision in *B.J. Alan Co. v. Congress Twp. Bd. of Zoning Appeals,* 124 Ohio St.3d 1, 2009-Ohio-5863, 918 N.E.2d 501, did not analyze the entire phrase "in accordance with a comprehensive plan." Instead, our focus was whether the term "a comprehensive plan" required a township to create its own comprehensive plan or whether it could follow the comprehensive plan created by the county. *Id.* at ¶ 13, 31. We avoided any discussion of the phrase "in accordance with," stating, "[W]e have not determined today * * * whether the * * * Township zoning ordinance is indeed 'in accordance' with the * * * County Comprehensive Plan." *Id.* at ¶ 43.

{¶ 47} Our analysis in *B.J. Alan,* however, supports the conclusion that the resolution and comprehensive plan are distinct. We did not examine whether the resolution was intended by the township to be a comprehensive plan, but instead remanded for the trial court to determine whether the resolution complied with

the separate and distinct county comprehensive plan, thus implicitly recognizing that a zoning resolution and a comprehensive plan are separate and distinct.

{¶ 48} As noted in the dissenting opinion of Judge Belfance in the court of appeals in this case:

> [R]ecent case law from the Ohio Supreme Court suggests that townships are required, pursuant to R.C. 519.02, to engage in some form of planning and study that would form the basis for the creation and adoption of their zoning regulations. *See B.J. Alan Co. v. Congress Twp. Bd. of Zoning,* 124 Ohio St.3d 1, 2009-Ohio-5863 [918 N.E.2d 501], ¶ 32–42 (noting that Wayne County's plan constituted a comprehensive plan as it "present[ed] a thorough study of the region and set[ ] forth comprehensive land-use goals for the county [ ]"). It would seem that, if the Supreme Court was inclined to take the position that a zoning regulation and a comprehensive plan were one and the same, it could have used *B.J. Alan* as an opportunity to clarify the law in this area.
>
> Thus, instead of examining whether the county's plan was a comprehensive plan, the Court could have chosen to examine the zoning regulations to see if they constituted a comprehensive plan.

(Brackets sic.) 2013-Ohio-4259, 2013 WL 5437644, ¶ 36.

{¶ 49} Planning-and-zoning scholars Stuart Meck and Kenneth Pearlman contend that *B.J. Alan* "resolved an important issue: zoning must be consistent with an independently prepared comprehensive plan that is adopted separately." Meck & Pearlman, *Ohio Planning and Zoning Law,* Section 4:37, at 121 (2014).

{¶ 50} Perhaps more troubling is the unintended consequences of today's majority opinion. Without explanation, the majority has compromised our holding in *B.J. Alan.* The language of R.C. 519.02(A) is almost identical to the language of R.C. 303.02(A), which grants authority to county commissioners to regulate building and land use. The General Assembly used the phrase "in accordance with a comprehensive plan" in both statutes to limit the exercise of police power in county and township zoning. The logical conclusion from today's majority opinion has a twofold effect. First, a county will not need to formulate a separate and distinct comprehensive plan to guide the enactment of its zoning resolutions. Second, a township will now be able to enact a zoning resolution that is merely "in accordance with" a county's zoning resolution.

{¶ 51} Lastly, the majority's reliance on *Cassell v. Lexington Twp. Bd. of Zoning Appeals,* 163 Ohio St. 340, 127 N.E.2d 11 (1955), as providing an implied definition of the term "comprehensive plan" is misplaced. The *Cassell* court did

not analyze the term "comprehensive plan" as used in R.C. 519.02(A): the statement that "[t]he absence of any comprehensive plan in the regulation * * * opens the door to an arbitrary and unreasonable administration of the regulation," *id.* at 346, was dicta. *Cassell* was a constitutional due-process challenge to a zoning regulation in Lexington Township. In reaching its conclusion that "the power to enact zoning regulations can not be exercised in an arbitrary or unreasonable manner," the court cited *Youngstown v. Kahn Bros. Bldg. Co.*, 112 Ohio St. 654, 148 N.E. 842 (1925), and *State ex rel. Synod of Ohio of United Lutheran Church in Am. v. Joseph*, 139 Ohio St. 229, 39 N.E.2d 515 (1942). *Id.* at 345–346. Both of those cases were decided prior to the enactment of the statute enabling townships to zone and were due-process challenges to municipal zoning ordinances. Neither case addressed the term "comprehensive plan" because a municipality's zoning resolution does not need to be formulated in accordance with a comprehensive plan.

## II. Issues Decided by the Majority That Were Not Accepted for Review

### A. Factors of a Comprehensive Plan

{¶ 52} The issue of what constitutes a comprehensive plan was not appealed to this court, and the parties did not brief or argue this point of zoning law. In fact, at oral argument, Apple Group's counsel, in response to questions from the bench, specifically stated that the issue of what constitutes a comprehensive plan was not before the court. Nevertheless, the majority uses this case as an opportunity to define a term that already has a particular meaning, without relying on experts or authoritative statements and without considering the unique needs of Granger Township, by adopting the six factors delineated by the Twelfth District Court of Appeals in *White Oak Property Dev., L.L.C. v. Washington Twp.*, 12th Dist. Brown No. CA2011–05–011, 2012-Ohio-425, 2012 WL 368254, ¶ 46.

{¶ 53} Without engaging in any statutory analysis, the *White Oak* court, relying on cases that were decided on constitutional grounds or that involved municipalities, which are not required to have a comprehensive plan, held that a township's zoning resolution and map was a "comprehensive plan" as that phrase is used in R.C. 519.02. *Id.* at ¶ 23. That court then stated that because the township's zoning resolution had addressed six factors, the resolution and map were "a comprehensive rural zoning plan." *Id.* at ¶ 46.

{¶ 54} The majority's decision to adopt these six factors to define a comprehensive plan is problematic. First, like the majority, the *White Oak* court failed to engage in any statutory interpretation of R.C. 519.02(A) and failed to acknowledge that this court had previously determined that the term "comprehensive plan" had a particular meaning, *see Symmes*, 87 Ohio St.3d at 555, 721 N.E.2d

1057, and ignored the commands of R.C. 1.42 that "[w]ords and phrases that have acquired technical or particular meaning * * * shall be construed accordingly." The *White Oak* court also did not analyze the history of or trace the development of the term "comprehensive plan" in the specialized field of land planning.

{¶ 55} Second, the *White Oak* court limited its adoption of the six factors to the zoning resolution and map before it, *id.* at ¶ 46, but today's majority broadens that application and uses those factors to define the term "comprehensive plan" as it is used in R.C. 519.02. This determination, in my opinion, removes the unique independent considerations of what factors should constitute a comprehensive plan for each township. *See* Meck & Pearlman, Section 4:32, at 102–104.

{¶ 56} Lastly, the *White Oak* factors are nothing more than the General Assembly's statutory limitations on township trustees' authority to regulate land use. *See* R.C. 519.02(A) ("in the interest of the public health and safety," "percentages of lot areas that may be occupied," "sizes of yards, courts, and other open spaces [and] the density of population," "the uses of land for trade, industry, residence, recreation, or other purposes," and the "board may divide all or any part of the * * * township into districts or zones of such number, shape, and area as the board determines"). Land use is a component of, but not synonymous with, a comprehensive plan. *See B.J. Alan,* 124 Ohio St.3d 1, 2009-Ohio-5863, 918 N.E.2d 501, ¶ 31; Meck & Perlman, Section 4:32, at 102–103.

{¶ 57} The *White Oak* factors are inconsistent with the expert opinions presented by the parties in this case and the elements discussed in the authoritative treatise by Meck and Perlman. Granger Township itself presented the expert testimony of Susan Hirsch, deputy director of the Medina County Department of Planning Services. She testified that a comprehensive plan is a document "looking 20 years in to the future" that serves as "a guide for a community's growth and development" and that it often incorporates maps and charts that show the community's likely future growth. According to Hirsch, the comprehensive plan contains "elements like housing, economic development, parks and recreation, agriculture," public facilities, and transportation and sets forth goals and objectives for the community as well as ways to implement those goals and objectives.

{¶ 58} David Hartt, president and sole owner of D.B. Hartt, Inc., a Cleveland-based planning-and-development consulting firm, testified as an expert for Apple Group. He stated that a comprehensive plan is "typically a community's deliberate, thoughtful statement of what their aspirations are as they look ahead * * * to how they envision the community being developed and/or preserved." He contended that the plan should take into account the pattern of economic development, traffic, public facilities, and road and infrastructure improvements as well as the implementation of the plan, typically through zoning. Additionally,

Hartt stated that the map that often is included in the plan "can be a very precise map indicating a future land use for each property or it can be more of a general map where it outlines some options for some property."

{¶ 59} Hirsch and Hartt agree as to what constitutes a comprehensive plan. Each opined that it should set forth the community's future goals as to growth and development, discuss community facilities, land use, economic development, transportation, and implementation and should contain a map. Their opinions reflect the discussion in Meck and Pearlman's treatise, which states that a comprehensive plan should be accompanied by a map and contain the following elements: general statements of the community's planning goals, land use, transportation, community facilities, housing, an implementation framework, and plans for the specific needs of a particular community, e.g., economic-development strategy or historic preservation. Meck & Pearlman, Section 4:32, at 102–104.

{¶ 60} It defies logic that the *White Oak* factors are indicative of a comprehensive plan when those are the factors set out in R.C. 519.02(A) as the aspects of land use that are to be regulated by a resolution in accordance with a comprehensive plan.

B. *Expert Opinions Whether Granger Township Has a Comprehensive Plan*

{¶ 61} The majority applies the six factors from *White Oak* to Granger Township's zoning resolution and concludes that Granger Township's resolution is a comprehensive plan. However, both Hirsch and Hartt opined that Granger Township's resolution is not a comprehensive plan.

{¶ 62} Hirsch testified that the resolution was deficient because it did not have a statement of goals and objectives, a survey of transportation infrastructure, demographic data, or an inventory of community facilities. Hartt opined that the lack of a comprehensive plan and the failure to include the features of a comprehensive plan in the zoning resolution left nothing for a planner to consult to determine whether the preservation of the community's natural features was appropriate to meet Granger Township's goals. Nevertheless, the majority rejects out of hand this expertise and knowledge, instead finding that Granger Township's zoning resolution is a comprehensive plan.

C. *Comprehensive Plan Rendered Meaningless*

{¶ 63} The majority's decision is a death knell to the General Assembly's limitation of a township's exercise of police power because it eliminates the requirement for a comprehensive plan independent of a township's zoning resolution. First, the majority opinion identifies land use as only one element needed for a comprehensive plan. Then, by holding that a zoning resolution may be the comprehensive plan, the majority has eliminated the distant-future-planning factor from a comprehensive plan.

{¶ 64} The statutory procedures for townships and counties to amend a zoning resolution are not so onerous that they cannot be undertaken on a regular basis. *See* R.C. 519.12 and 303.12. This case illustrates how easily zoning regulations can change: Granger Township enacted a zoning resolution effective May 17, 2006, and a mere 15 months later enacted another zoning resolution effective August 8, 2007. The ability to amend a zoning resolution in such a short period of time is antithetical to a comprehensive plan's purpose of looking 15 to 20 years into the future.

{¶ 65} Accordingly, the majority opinion renders the grant of authority to a township to zone pursuant only to a resolution in accordance with a comprehensive plan meaningless. Township trustees as well as county commissioners will be able to exercise this power without considering the long-term impact of their zoning decisions. Zoning resolutions will be enacted at the whims of those elected at that moment in time. Such an outcome is contrary to the majority's recognition "that a comprehensive plan serves to protect against the arbitrary and unreasonable administration of a zoning regulation." Majority opinion at ¶ 12, citing *Cassell*, 163 Ohio St. 340, 127 N.E.2d 11.

### III. Alternative Resolution

#### A. *Judicial Review when Township Lacks a Separate, Single, Formal Comprehensive Plan*

{¶ 66} Before the rise of zoning regulations in the early 20th century, governments did not regulate land-use conflicts in advance. Meck & Pearlman, Section 1:2, at 4–5, and Section 2:1, at 19. Instead, conflicts were decided primarily by the courts after a dispute had arisen. *Id.*, Section 2:1, at 19. Regulating land use in this manner was limiting. Decisions affected only the parties to the suit and often the broader needs of society were not considered. *Id.* at 19–20. Further, the increasing complexity of the issues imposed upon the expertise and time of courts. Accordingly, governments turned to zoning to regulate land use so that property disputes would not arise and planning and land development could proceed appropriately. *Id.* at 19.

{¶ 67} The state's authority to plan and regulate land use is derived from its police power, which is vested in the legislature. *See* Ohio Constitution, Article II, Section 1. Municipalities were the first to receive the police power to regulate by zoning in R.C. Chapter 713.

{¶ 68} The Ohio Supreme Court upheld the constitutionality of a municipal zoning ordinance in *Pritz v. Messer*, 112 Ohio St. 628, 149 N.E. 30 (1925). Recognizing the home-rule authority of a municipality in Article XVIII, Section 3 of the Ohio Constitution, we held that "[u]nder the police power[,] society may restrict the use of property without making compensation therefor, if the

restriction be reasonably necessary for the preservation of the public health, morals, or safety." *Pritz* at 637–638.

{¶ 69} One year later, the United States Supreme Court held that a municipal ordinance restricting use of land in a residential area was constitutional. *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 396, 47 S.Ct. 114, 71 L.Ed. 303 (1926). After recognizing the validity of exercising police power for the benefit of the public welfare, the court stated, "A regulatory zoning ordinance, which would be clearly valid to the great cities, might be clearly invalid as applied to rural communities," *id.* at 387, "like a pig in the parlor instead of the barnyard," *id.* at 388. In reaching its determination, the court held that the burden of proof rested with the party challenging the zoning ordinance and the court's role was limited to determining whether the ordinance was reasonable to promote a valid public purpose. *Id.* at 395–397.

{¶ 70} Absent the adoption of a charter, *see* Ohio Constitution, Article X, Section 3, Ohio counties' and townships' police-power authority "originates through direct statutory delegation by the General Assembly, instead of through the state constitution." Meck & Pearlman, Section 3:4, at 63. The General Assembly granted the authority to regulate land use to counties and townships in R.C. Chapters 303 and 519. As stated previously, such an exercise of police power is limited "to that which is expressly delegated * * * by statute." *See Yorkavitz*, 166 Ohio St. at 351, 142 N.E.2d 655.

{¶ 71} Like legislative enactments, zoning regulations enjoy a presumption of constitutionality. *Brown v. Cleveland*, 66 Ohio St.2d 93, 95, 420 N.E.2d 103 (1981). The burden of proving unconstitutionality is on the party challenging the zoning regulation. *Negin v. Mentor Bd. of Bldg. & Zoning Appeals*, 69 Ohio St.2d 492, 495, 433 N.E.2d 165 (1982); *Ketchel v. Bainbridge Twp.*, 52 Ohio St.3d 239, 245, 557 N.E.2d 779 (1990). Furthermore, "[i]n the absence of evidence to the contrary, it is presumed that the procedure necessary to the legal adoption of legislation by a public legislative body has been followed." *Smith v. Juillerat*, 161 Ohio St. 424, 119 N.E.2d 611 (1954), paragraph one of the syllabus.

{¶ 72} It is against this historical backdrop and with these legal principles in mind that I turn to the issues presented currently. Apple Group asserts two propositions of law.

{¶ 73} The first proposition of law states:

> For purposes of a township's exercise of its statutory zoning power, the "zoning plan" that R.C. Chapter 519 empowers townships to adopt by resolution, which includes the zoning regulations and a zoning map, is not identical to or a substitute for the "comprehensive plan" identified in R.C.

519.02, with which R.C. 519.02 requires the "zoning plan" to be "in accordance."

{¶ 74} As stated above, the clear and unambiguous language of R.C. 519.02(A) requires a comprehensive plan separate and distinct from the zoning resolution.

{¶ 75} Apple Group's second proposition of law states:

A township's zoning regulations, adopted by resolution under R.C. Chapter 519, are, standing alone, insufficient as a matter of law to establish that such regulations are "in accordance with a comprehensive plan," as R.C. 519.02 requires.

{¶ 76} Apple Group seemingly argues in both propositions of law that a comprehensive plan is a document drafted after professionals complete studies of the area and its future growth. While I agree that a comprehensive plan would best be drafted as a single formal document, there is no textual support for such a requirement in the Revised Code.

{¶ 77} The General Assembly did not define the term "comprehensive plan" in R.C. Chapter 519. While zoning-and-planning experts agree with our precedents that the term has a particular meaning, it is clear that those experts believe that a plan should nevertheless be flexible and controlled by the unique needs of each township. I agree with Apple Group that what is appropriate for an agricultural township might not be what is appropriate for a more cosmopolitan township. However, I reject the argument made by Apple Group and amicus curiae, Ohio Township Association, that to be valid, a "comprehensive plan" must be drafted by a professional planner, which could require the expenditure of "tens of thousands of dollars." The statute does not require a comprehensive plan formulated by professional planners after the completion of expensive studies. Instead, the statute requires a zoning commission, in the development of the zoning plan, to make use of "information and counsel" from "public officials, departments and agencies," but it leaves to the discretion of the township, and its financial health, whether to employ "planning consultants." *See* R.C. 519.05. It would be unreasonable to find that a comprehensive plan must be created by professional planning consultants when it is clear that the General Assembly considered the fiscal limitations of townships and granted townships the discretion whether to employ them.

{¶ 78} I further reject Apple Group's determination that Granger Township does not have a comprehensive plan separate from the zoning resolution. The statement that Granger Township does not have a comprehensive plan for

guidance for the proposed rezoning, which is found in a staff report from the township's planning department, is subject to multiple meanings.

{¶ 79} A comprehensive plan does not need to be a single document. Instead, I believe that a comprehensive plan may rely on numerous sources. In other words, the township's rationale for ensuring the appropriate use and development of land may be derived from several sources. This conclusion balances the need to rely on experts to formulate the comprehensive plan, *see Order of Ry. Conductors,* 329 U.S. at 525, 67 S.Ct. 405, 91 L.Ed. 471, against the fact that the General Assembly has failed to provide a definition for the term "comprehensive plan" and the mechanisms by which it is to be formulated. I refuse, however, to speculate as to the source or sources from which a comprehensive plan might be formulated, because this determination would fall within the province of the trial court.

{¶ 80} Lastly, contrary to Apple Group's argument, the determination that Granger Township lacks a separate, single, formal comprehensive plan does not render the township's zoning resolution invalid. Instead, I believe that the failure to have a separate comprehensive plan means only that the presumption of the resolution's validity is rebuttable. *See Raabe v. Walker,* 383 Mich. 165, 178, 174 N.W.2d 789 (1970); *Forestview Homeowners Assn., Inc. v. Cook Cty.,* 18 Ill.App.3d 230, 242, 309 N.E.2d 763 (1974). Therefore, if the party challenging the zoning resolution shows that a township does not have a separate comprehensive plan, the burden shifts to the township to present evidence that notwithstanding its failure to formulate a plan, the resolution is a valid exercise of police power granted by the General Assembly.

## B. Remand to Trial Court

{¶ 81} Accordingly, I would reverse the judgment of the Ninth District Court of Appeals, and I would remand this matter to the trial court with instructions to determine, relying upon the knowledge and experience of experts, what would constitute a comprehensive plan formulated for the unique needs of Granger Township. Thereafter, Apple Group would have the burden to prove that Granger Township does not have a separate comprehensive plan. Whether Apple Group is successful in establishing that Granger Township does not have a separate comprehensive plan will dictate which party carries the burden of proving that the resolution is a proper exercise of police powers.

## IV. Conclusion

{¶ 82} Respectfully, I dissent. "In Ohio, the authority of a township to enact zoning ordinances derives not from the township's inherent authority or the Ohio Constitution, but from the General Assembly." Majority opinion at ¶ 6. There-

fore, township trustees can exercise only the authority specifically granted by the legislature.

{¶ 83} The unambiguous language in R.C. 519.02(A) demonstrates that the General Assembly intended to limit a township's exercise of zoning power to regulations enacted "in accordance with a comprehensive plan." Since a township's zoning resolution and a comprehensive plan cannot be one and the same, I would hold that a comprehensive plan must be separate and distinct from a zoning resolution.

{¶ 84} Moreover, I would neither delineate the factors that are indicative of a comprehensive plan nor determine whether Granger Township even has a comprehensive plan. These issues were not raised as propositions of law in this appeal, and the parties neither briefed nor argued these matters. The majority crafts its own definition for a term that has a particular meaning in the field of zoning. The majority's definition is inconsistent with the expert testimony presented in this matter and does not consider the unique needs of Granger Township.

{¶ 85} Further, I do not believe that a comprehensive plan must be a single formal document. Instead, it may be derived from several sources. In the event, however, that Apple Group is able to prove that Granger Township does not have a comprehensive plan, even one derived from a compilation of sources, Granger Township's zoning resolution would not be presumptively invalid. Instead, the burden of proof would then shift to Granger Township to establish that its resolution is a valid exercise of the police power granted to it by the General Assembly.

{¶ 86} Accordingly, I respectfully dissent.

————————

Berns, Ockner & Greenberger, L.L.C., Sheldon Berns, Benjamin J. Ockner, and Gary F. Werner, for appellant.

Dean Holman, Medina County Prosecuting Attorney, and Brian M. Richter, Assistant Prosecuting Attorney, for appellees.

Brosius, Johnson & Griggs, L.L.C., Donald F. Brosius, Peter N. Griggs, and Jennifer L. Huber, urging affirmance for amicus curiae, Ohio Township Association.